NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADVANCED ORTHOPEDICS & SPORTS MEDICINE INSTITUTE, P.C., <br><br> Plaintiff, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Civ. No. 20-7693 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Aetna Life Insurance Company ("Defendant"). (ECF No. 8.) Plaintiff Advanced Orthopedics & Sports Medicine Institute, P.C. ("Plaintiff") opposes. (ECF No. 9.) The Court has decided the Motion based on the written submissions and without oral argument, pursuant to Local Rule 78.1(b). For the reasons stated herein, the Motion to Dismiss (ECF No. 8) is granted.

## BACKGROUND

On November 26, 2014,[1] Plaintiff's contractor, Dr. Grigory Goldberg, performed back surgery on a patient ("Patient") at Centrastate Medical Center. (Compl. ¶ 4, ECF No. 1.) Patient was admitted with a burst fracture and appeared to be in a significant amount of pain. (Id. ¶ 4.) Dr. Goldberg, the on-call attending orthopedic surgeon, performed the surgery within hours of Patient's arrival at the hospital. (Id. ¶ 5.)

---

[1] The Complaint lists the date of the surgery as November 26, 2014, whereas the Opposition lists the date as November 25, 2014. (Compl. ¶ 4, ECF No. 1; Opp'n at 3, ECF No. 9.)

1

Patient's health insurance coverage was through the State of New Jersey State Health Benefits Plan ("SHBP"). (*Id.* ¶ 2.) Defendant administered Patient's insurance plan (the "Plan") through the SHBP. (*Id.*) The Plan is a Health Maintenance Organization ("HMO") that requires a referral from a primary care physician before obtaining certain kinds of care or out-of-network treatment. (*Id.* ¶ 18; Plan at 70, Petrozelli Cert. Ex. A, ECF No. 8-3.) The Plan does not require a referral from a primary care physician to obtain emergency care.[2] (Compl. ¶ 20; Plan at 9.) Plaintiff is an out-of-network provider. (Compl. ¶ 3.)

After Patient's surgery, Plaintiff submitted an invoice for the total amount of $167,542.02 to Defendant. (*Id.* ¶ 6.) Defendant denied all claims related to the surgery because there was no precertification or authorization for the claims. (*Id.* ¶ 15.) On January 29, 2015, Defendant sent Plaintiff an Explanation of Benefits that included the denial codes "Service not authorized," and "Precertification/authorization/notification absent." (*Id*. ¶ 16.) On February 25, 2015, Defendant sent Plaintiff another letter stating that the authorization on file in its system denied the procedure codes and no payment would be issued. (*Id.* ¶ 17.) The Complaint does not state that Plaintiff took any additional steps to appeal Defendant's decision after the receipt of the February 25, 2015 letter. With unpaid interest, the total outstanding amount of the claim as of the date of the Complaint was $268,067.00. (*Id.* ¶ 6.)

---

[2] The Plan defines an emergency medical condition as:
> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that a prudent layperson (including the parent of a minor child or the guardian of a disabled individual), who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to result in:
> - Placing the health of the individual (. . .) in serious jeopardy;
> - Serious impairment to bodily function; or
> - Serious dysfunction of any bodily organ or part.

(Plan at 25, Petrozelli Cert. Ex. A, ECF No. 8-3.)

Plaintiff filed the Complaint on June 23, 2020 seeking (1) repayment of the original cost of surgery on the basis of unjust enrichment, and (2) prompt payment of interest. (*Id.* ¶¶ 30–38.) The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), because the parties are diverse and the amount in controversy exceeds $75,000. (*Id.* ¶ 7.) On July 30, 2020, Defendant filed a Motion to Dismiss, arguing that (i) Defendant is not a proper party for the claim, (ii) this Court lacks jurisdiction over the claims raised in the Complaint, and (iii) Plaintiff did not exhaust the SHBP's mandatory appeals procedure. (Mot. at 5–8, ECF No. 8.) Plaintiff filed an Opposition (ECF No. 9), and Defendant filed a Reply (ECF No. 11). Defendant's Motion to Dismiss is presently before the Court.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.*; *see also Iqbal*, 556 U.S. at 679. Finally, the court must assume the veracity of all well-pleaded factual allegations and "determine whether the facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679); *see also Malleus*, 641 F.3d at 563. If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir.

2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review on a Rule 12(b)(6) motion to the pleadings, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material without converting the motion to dismiss" into a motion for summary judgment. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). This includes "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citation omitted); *see also In re Rockefeller*, 184 F.3d at 287 (internal citations omitted) (noting that a court may consider documents "integral to or explicitly relied upon in the complaint" and documents that are "undisputedly authentic").

## **DISCUSSION**

### I.     The State Health Benefits Plan

The SHBP is a state-run and state-funded plan that provides health insurance to state employees. N.J. Stat. Ann. §§ 52:14-17, 52:14-17.27. It "is, in effect, the State of New Jersey acting as a self-insurer." *Roche v. Aetna, Inc.*, 681 F. App'x 117, 120 (3d Cir. 2016) (citations omitted). The State contracts directly with insurance carriers, such as Defendant, to provide medical coverage to SHBP members. N.J. Stat. Ann. § 52:14-17.28. The State Health Benefits Commission ("Commission") administers the SHBP and has the authority to develop rules and regulations related to its operation. § 52:14-17.27. The funds to pay SHBP claims are appropriated by the legislature and "come from the coffers of the Treasury of the State of New Jersey." *Kindred Hosps. E., LLC v. Horizon Healthcare Servs., Inc.*, 2019 WL 643604, at *1

4

(D.N.J. Feb. 14, 2019). Because the SHBP is state-run, it is exempt from the requirements of the Employee Retirement Income Security Act ("ERISA"). *Roche*, 681 F. App'x at 120.

State law and the New Jersey Administrative Code govern the SHBP. The Code specifically addresses the process of appealing an adverse benefit decision made by a carrier. N.J. Admin. Code § 17:9-1.3. The Code provides that

> [a]ny member of the SHBP who disagrees with the decision of the carrier and has exhausted all appeals within the plan, as well as any external review required by the [Patient Protection and Affordable Care Act ("PPACA")], if applicable, may request that the matter be considered by the Commission.

§ 17:9-1.3(a). The final administrative determination of the Commission may be appealed to the New Jersey Superior Court, Appellate Division. § 17:9-1.3(d)(2).

## II.     Exhaustion of Administrative Remedies

### A.     *The SHBP Requires Exhaustion*

"All available and appropriate administrative remedies generally should be fully explored 'before judicial action is sanctioned.'" *Burley v. Prudential Ins. Co. of Am.*, 598 A.2d 936, 939 (N.J. Super. Ct. App. Div. 1991) (quoting *Abbot v. Burke*, 100 N.J. 269, 296 (1985)). Exhaustion ensures that "claims will be heard as a preliminary matter by a body with expertise, a factual record may be created for appellate review, and there is a chance that the agency decision may satisfy the parties and keep them out of court." *Burley*, 598 A.2d at 939 (quoting *Atl. City v. Laezza*, 80 N.J. 255, 265 (1979)).

The exhaustion requirement applies to claims related to the SHBP. *Roche*, 681 F. App'x at 120. Courts have found that an SHBP member must generally exhaust administrative remedies before resorting to court. *See id.* at 123 (concluding that the language of the regulations, the language of the plan, and analogous ERISA caselaw render the exhaustion requirement mandatory); *see also Advanced Rehab of Jersey City v. Horizon Healthcare of N.J.*, 2011 WL

5

3629176, at *3 (N.J. Super. Ct. App. Div. Aug. 19, 2011) (stating that "[w]e have consistently recognized the statutory and regulatory scheme that requires disputes regarding eligibility and the payment of benefits under the [SHBP] to be submitted first to the [Commission], and, only thereafter, to this court for resolution"); *Burley*, 598 A.2d at 939 (finding that "sound principles of administrative law and the relevant contract provisions" require the plaintiff to seek recourse by administrative appeal to the Commission "before attempting to sue for damages").

Moreover, although exhaustion is generally an affirmative defense, *see Jones v. Bock*, 549 U.S. 199, 200 (2007), this Court has dismissed claims arising from SHBP benefits at the motion to dismiss stage for failure to exhaust administrative remedies. *See Gregory Surgical Servs., LLC v. Blue Cross Blue Shield of N.J., Inc.*, 2009 WL 749795, at *4 (granting defendant's motion to dismiss because "[p]laintiff's recourse to appeal claim decisions by [defendant insurance company] is to file an appeal with the [Commission],"); *see also Kindred Hosps.*, 2019 WL 643604, at *2–3 (granting defendant's motion to dismiss because "those disagreeing with the determinations concerning reimbursements for medical care must exhaust administrative remedies pursuant to New Jersey Administrative Code 17:9-1.3(a) before proceeding to litigation").

  B. *The Plan Requires Exhaustion*

Plaintiff advances several arguments to explain why it was not required to exhaust administrative remedies prior to filing in court. First, Plaintiff contends that the exhaustion requirement does not apply to the Plan because it is a non-ERISA plan. (Opp'n at 8, ECF No. 9.) This argument is without merit. The Third Circuit has applied the exhaustion requirement to claims arising under the SHBP. *See Roche*, 681 F. App'x at 120 (considering only the appellant's

6

SHBP-related claims and concluding that she was required to exhaust her administrative remedies before filing in court).

Second, Plaintiff contends that the Plan does not require exhaustion. (Opp'n 8.) Plaintiff states that the Plan Handbook includes no requirement of appeal to the Commission, in contrast to the plans at issue in other cases where courts found that exhaustion was required. (*Id.* at 9.) Plaintiff views this purported absence as fatal to any argument that it was required to exhaust remedies before filing suit. However, contrary to Plaintiff's view, the language of the Plan does require exhaustion.

The Plan Handbook outlines two types of appeals: health claim appeals and administrative appeals. (Plan at 59–65.) The parties disagree as to how Plaintiff's claim should be classified under the Plan. (*See* Reply at 2–3, ECF No. 11.) Both types of appeals, however, require the member to exhaust administrative remedies before seeking external review. (Plan at 60, 65.)

    1.  <u>Health Claim Appeals</u>

Under the Plan, appeals involving benefit determinations for coverage denials or reductions for "a service, supply or benefit" are health claim appeals. (*Id.* at 59.) The Plan differentiates health claim appeals for services rendered before and after January 1, 2012. (*Id.* at 60.) For services rendered before January 1, 2012, appeals will be referred to the Commission for external review "as appropriate once [Defendant's] two levels of internal appeal are exhausted." (*Id.*) For services rendered after January 1, 2012, the member may request external review by an Independent Review Organization ("IRO") instead of being automatically referred to the Commission. (*Id.*) The member can request external IRO review through Defendant after the two levels of internal appeal are exhausted. (*Id.*)

7

Plaintiff reads this distinction to mean that after January 1, 2012 the Commission had no role to play in appeals. (Opp'n at 7.) Because Dr. Goldberg performed the surgery in 2014, Plaintiff argues, Commission review was not available and it was not required do "anything prior to bringing a state-law claim." (*Id.* at 9.) Plaintiff's argument is unavailing. First, the Plan states clearly that a member is required exhaust the two levels of internal appeal before seeking IRO review. (Plan at 60.) Second, the addition of an IRO option did not strip the Commission of its authority to hear health claim appeals. When there are discrepancies between the Plan and state law, state law controls. The Administrative Code enables a SHBP member to appeal to the Commission when all internal appeals are exhausted, *see* N.J. Admin. Code § 17:9-1.3, and the Plan's inclusion of an additional IRO option does not override or otherwise modify this provision. Further, nothing in the Plan Handbook indicates that a member could not appeal a decision made by an IRO to the Commission if the member chooses to pursue IRO review.

        2.    <u>Administrative Appeals</u>

Administrative appeals cover "an adverse determination involving benefit limits, exclusions, or contractual issues." (Plan at 64.) Under the terms of the Plan, a member who files an administrative appeal must exhaust two levels of internal review before being referred to the Commission (*Id.* at 65.) Thus, if Plaintiff's claim is classified as an administrative appeal, Plaintiff must exhaust the same two levels of internal appeal before proceeding to Commission review.

In sum, regardless of how Plaintiff's claim is classified, the Court concludes that Plaintiff was required to exhaust administrative remedies before filing suit. Both the New Jersey regulatory scheme and the plain language of the Plan indicate that exhaustion of remedies is mandatory for claims arising under the SHBP. Federal and state courts have consistently arrived

at the same conclusion and have dismissed claims for unpaid SHBP benefits because the plaintiff did not first appeal pursuant to New Jersey Administrative Code § 17:9-1.3. To reach any other conclusion would result in a circumvention of all appeals processes prescribed by the Plan and by state law.

   C. *Plaintiff Has Not Exhausted Administrative Remedies*

  Plaintiff does not allege that it exhausted, or attempted to exhaust, any internal appeal or any form of appeal to the Commission. Plaintiff received an Explanation of Benefits from Defendant on January 29, 2015. (Compl. ¶ 16.) Plaintiff received a subsequent letter on February 25, 2015 from Defendant stating that the authorization on file in its system denied all the procedure codes and therefore no payment would be issued. (*Id.* ¶ 17.) Beyond the letter received on February 25, 2015, the Complaint does not include any information about the status of the claim or any form of appeal.

  The Court concludes that Plaintiff was required to exhaust administrative remedies before proceeding to litigation. Because Plaintiff did not exhaust administrative remedies, Plaintiff's claims are dismissed.[3]

## **CONCLUSION**

  For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 8) is granted. An appropriate Order will follow.

Date: <u>October 27, 2020</u>                <u>*/s/Anne E. Thompson*</u>
                         ANNE E. THOMPSON, U.S.D.J.

---

[3] Because the Court finds that Plaintiff failed to exhaust administrative remedies, the Court will not address Defendant's remaining arguments.